**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BAO-TRAN XUAN NGO, | ) | Case No. 20-12224-BFK |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| CACI, INC. – FEDERAL, | ) | |
| | ) | Adversary Proceeding |
| Plaintiff, | ) | No. 21-01011-BFK |
| v. | ) | |
| | ) | |
| BAO-TRAN XUAN NGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This adversary proceeding involves the dischargeability of legal fees and costs incurred by the Plaintiff, CACI, Inc. – Federal ("CACI"), in pre-petition arbitration proceedings in which the Defendant, Bao-Tran Xuan Ngo ("Ms. Ngo"), was found to have misappropriated CACI's trade secrets. Specifically, the matter comes before the Court on the Defendant's Motion to Dismiss the Complaint and on the Plaintiff's Motion for Summary Judgment. Docket Nos. 7, 12. The Plaintiff's Motion for Summary Judgment included its Opposition to the Defendant's Motion to Dismiss. Docket No. 12. The Defendant filed an Opposition to the Plaintiff's Summary Judgment Motion. Docket No. 17. The Plaintiff filed a Reply Memorandum. Docket No. 18. The Court heard the parties' arguments on May 4, 2021. For the reasons stated below,

1

the Court will grant the Plaintiff's Motion for Summary Judgment and will deny the Defendant's Motion to Dismiss.

## Findings of Fact

The Court finds that the following facts are not genuinely in dispute.

*A. Ms. Ngo's Employment with CACI.*

1. Ms. Ngo is an individual residing in Loudoun County, Virginia.

2. In October 2014, Ms. Ngo accepted a position as a Director with CACI, a large government contracting firm with offices in Northern Virginia. Pl. Ex. A at 6.[1]

3. At the time she accepted her employment with CACI, Ms. Ngo entered into an Employment Agreement. Pl. Ex. D. The Employment Agreement provided in part:

> My Duties as a CACI Employee: Fiduciary Duties. I understand that as an employee the law places upon me certain fiduciary responsibilities to CACI including, the duty to place the interests of CACI and its shareholders above my own personal interest in any case where they might conflict. I will fully perform my fiduciary responsibilities to CACI as required by law both during and after the period of my employment.

*Id.* at 3.

4. In May 2017, Ms. Ngo was appointed as Division Vice President, Secure Tactical Communications. Pl. Ex. A at 6.

5. On August 11, 2017, CACI terminated Ms. Ngo's employment. *Id.* at 9.

*B. The District Court Action.*

6. On September 5, 2017, CACI filed a Complaint against Ms. Ngo in the U.S. District Court for the Eastern District of Virginia, alleging the misappropriation of its trade

---

[1] The Plaintiff's Exhibits will be referred to as "Pl. Ex. __." The Defendant's Exhibits will be referred to as "Def. Ex. __."

2

secrets and seeking monetary and injunctive relief. *CACI, Inc. – Federal v. Ngo*, 1:17-cv-00988-CMH-MSN ("the District Court action").

7. The District Court entered a Temporary Restraining Order at CACI's request, enjoining Ms. Ngo from "accessing, using, copying, divulging, disseminating, disclosing, altering, destroying or deleting" any trade secrets. *Id.*, Docket No. 14.

8. The District Court entered a Preliminary Injunction against Ms. Ngo on October 24, 2017. *Id.*, Docket No. 54.

9. Ms. Ngo, who was represented by counsel, filed a motion to dismiss the Complaint, or in the alternative, to compel arbitration. *Id.*, Docket No. 51.

10. The District Court stayed the case pending arbitration on November 17, 2017. *Id.*, Docket No. 58.

C. *The Arbitration Proceeding.*

11. CACI then instituted arbitration proceedings against Ms. Ngo with the American Arbitration Association. *CACI, Inc. – Federal v. Ngo*, Case No. 01-18-0001-0633.

12. Ms. Ngo was represented by counsel throughout the arbitration proceedings until her counsel withdrew in April 2019.

13. The Arbitrator conducted a three-day evidentiary hearing on June 10, 11, and 12, 2019, which Ms. Ngo did not attend.

14. On September 9, 2019, the Arbitrator issued an Interim Award. Pl. Ex. A ("the Interim Award").

15. In the Interim Award, totaling 96 pages, the Arbitrator made the following factual findings:[2]

- Ms. Ngo was employed in "senior positions" with CACI, including on federal contracts involving classified or sensitive information. *Id*. at 1.
- She worked at the "highest levels of the company." *Id*. at 6-7.
- On August 7, 2017, CACI placed Ms. Ngo on administrative leave. The company terminated her employment on August 11, 2017. *Id*. at 9.
- Ms. Ngo transferred to herself a substantial amount of internal information, most of which was labeled "CACI Proprietary Information." *Id*. at 2.
- While CACI was moving for a Preliminary Injunction in the District Court, and while the parties were negotiating the terms of that Injunction, Ms. Ngo applied the PrivaZer and Secure Eraser programs to her laptop. *Id*. at 13.
- She later used the programs USB Oblivion, PrivaZer, Secure Eraser, Shellbag Analyzer & Cleaner and PrivaZer Remover. *Id*. at 15, 60-69.
- She also downloaded the information at issue on to two portable hard drives, which she kept in a safe-deposit box at Wells Fargo bank. *Id*. at 23, 89.
- In April 2019, Ms. Ngo's counsel withdrew from the arbitration proceedings. She did not participate in the arbitration thereafter. *Id*. at 24, 26.
- The information transferred by Ms. Ngo constituted trade secrets within the meaning of the Defend Trade Secrets Act (DTSA) and the Virginia Uniform Trade Secrets Act (VUTSA). *Id*. at 32, 41, 50. Further, the information had independent economic value, actual or potential, from not being generally known. *Id*. at 41.
- CACI made reasonable efforts to keep the information secret. *Id*. at 35.
- Ms. Ngo acquired the information by improper means, including the breach of her Employment Agreement. *Id.* at 39-40.
- Ms. Ngo's retention of the trade secrets violated her Employment Agreement, as well as her fiduciary duties to the company. *Id*. at 51.
- Ms. Ngo had a duty to preserve the information. *Id*. at 57-59.
- Ms. Ngo destroyed and altered the information "with the intent to deprive CACI of metadata and other information critical [to] the resolution of central issues in [the] arbitration [and] she acted with the intent to deprive CACI of this information's use in the civil action and in [the] arbitration." *Id*. at 60. Ms. Ngo "acted with the intent to deprive CACI of the use of information she should have preserved." *Id*. at 70-71.[3]
- By adverse inference, Ms. Ngo "intentionally targeted the electronic information stored on her computer comprising CACI's trade secrets by using this information [for] her own purposes as a professional in the competitive field of government contracting in the communications and intelligence community." *Id*. at 78-79.

---

[2] Both the Interim Award and the Final Award are extensive and thorough. The Court summarizes only those portions of the two Awards that are relevant to its collateral estoppel decisions, below.
[3] The Arbitrator employed the standard of "clear and convincing evidence," a higher and more difficult burden to meet than the preponderance standard employed in this adversary proceeding. *See* Part I, below.

4

- There was, on the other hand, no evidence that Ms. Ngo gained any financial benefit from her acquisition of CACI's trade secrets. *Id*. at 82.
- Ms. Ngo's conduct demonstrated "willfulness." *Id*. at 86.[4]
- Ms. Ngo's undisclosed copying of her computer, compounded by her lack of candor about it, "strongly bespeaks an intention to cause injury or harm to CACI." *Id*. at 92.
- Ms. Ngo's keeping secret copies of the information on the portable drives "shows an intent to cause injury or harm." *Id*. at 93.
- "Ms. Ngo's misappropriation of CACI's trade secrets was done willfully and maliciously." *Id*. at 93.

16.  The Arbitrator concluded, among other things, in the Interim Award:

- "Ms. Ngo's misappropriation of the 24 trade secrets . . . was willful and malicious within the meaning of the DTSA and the VUTSA." *Id*. at 95.
- "Ms. Ngo breached her Employment Agreement with CACI and her fiduciary duties to CACI by failing to return to CACI at the end of her employment the Confidential Information of CACI comprising the 24 trade secrets. . . ." *Id*. at 96.
- CACI was entitled to an award of attorney's fees and costs "for willful and malicious misappropriation, as provided by the DTSA and the VUTSA. . . ." *Id*.
- CACI also was entitled to an award of attorney's fees and costs "incurred as a result of Ms. Ngo's intentional deprivation of CACI of use in the arbitration of electronically stored information that Ms. Ngo should have preserved. . . ." *Id*.

On February 21, 2020, the Arbitrator issued a Final Award. Pl. Ex. B ("the Final Award").

18.  In the Final Award the Arbitrator made the following factual findings.

- Ms. Ngo's continuing possession and control of CACI's trade secrets caused CACI to suffer irreparable injury. *Id*. at 8-9.
- CACI demonstrated that the remedies available at law were inadequate. *Id*. at 9.
- The balance of hardships favored CACI. *Id*. at 11.
- The public interest weighed in favor of a permanent injunction. *Id*. at 12.
- CACI was entitled to an award of attorney's fees and costs, both as a result of Ms. Ngo's misappropriation of CACI's trade secrets and as a result of her spoliation of the evidence. *Id*. at 13-14.

---

[4] The Arbitrator cited caselaw defining a "willful act" as one performed voluntarily and intentionally and a "malicious act" as one performed with "an intent to cause injury or harm." *Id*. at 85 *citing Steves and Sons, Inc. v. Jeld-Wen, Inc*., C.A. No. 3:16-cv-00545-REP (E.D. Va.), ECF No. 1614
(May 5, 2018) (Jury Instruction No. 38).

5

19. The Arbitrator awarded the following relief in the Final Award:

- Ms. Ngo shall pay $683,845.70 in attorneys' fees to CACI within 14 days of the Final Award. *Id*. at 42.
- Ms. Ngo also shall pay $67,022.37 in expenses to CACI within 14 days of the Final Award. *Id*.
- Ms. Ngo also shall pay $2,940.75 in costs to CACI within 14 days of the Final Award. *Id*.
- A Permanent Injunction prohibiting Ms. Ngo from "[d]isclosing, using, altering or copying, directly or indirectly," and from "[d]estroying, altering or otherwise failing to preserve" all of CACI's trade secrets. *Id*. at 43-44.
- A Mandatory Injunction requiring Ms. Ngo to return to CACI all of its trade secrets. *Id*. at 44-45.

D. *The District Court Confirms the Arbitration Award.*

20. On June 12, 2020, the District Court entered an Order lifting the stay that it previously imposed and confirmed the Arbitration Award. Civil Action No. 1:17-cv-00988-CMH-MSN, Docket No. 83.

21. CACI issued post-judgment Interrogatories and Requests for Production of Documents in Aid of Execution to Ms. Ngo. *Id*. at 85.

22. On September 18, 2020, the District Court entered an Order granting a Motion to Compel filed by CACI. *Id*., Docket No. 90.

23. On October 9, 2020, CACI filed a Motion for an Order to Show Cause and for Civil Contempt. *Id*., Docket Nos. 91, 92.

E. *Ms. Ngo Files for Bankruptcy.*

24. On October 3, 2020, Ms. Ngo filed a Voluntary Petition under Chapter 13 with this Court. Case No. 20-12224-BFK.

25. The District Court entered an Order staying its case pending disposition of Ms. Ngo's bankruptcy case. Case No. 1:17-cv-00988-CMH-MSN, Docket No. 95.

26.     Ms. Ngo voluntarily converted her Chapter 13 case to one under Chapter 7 on November 17, 2020. Docket Nos. 37, 39.

27.     On February 9, 2021, CACI timely filed the Complaint in this adversary proceeding seeking a determination of the dischargeability of the attorney's fees and costs awarded by the Arbitrator in the arbitration proceeding.

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I)(determinations as to the dischargeability of particular debts).

### I.      The Standards Under Bankruptcy Rules 7012 and 7056.

This case presents the unusual posture of competing motions under Bankruptcy Rules 7012 (motions to dismiss) and 7056 (summary judgment). Under Rule 7012 (incorporating Federal Rule of Civil Procedure 12(b)(6)), the Court is required to accept as true all well-pleaded facts in the Complaint, but is not required to accept allegations that are legal conclusions. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) ("[A]lthough a court must accept as true all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein. The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)"). Under Rule 7056 (incorporating Federal Rule of Civil Procedure 56), on the other hand, the Court must view the facts and the inferences reasonably drawn therefrom in the light most

favorable to the nonmoving party, here the Debtor. *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992).

In this case, the Rule 12(b)(6) standard favors CACI, while the summary judgment standard favors Ms. Ngo as the non-moving party. There are almost no material facts that are genuinely disputed. Where the facts are disputed, the Court will employ the summary judgment standard, viewing the facts in the light most favorable to Ms. Ngo, the non-moving party, because CACI, as the Plaintiff, bears the burden of proof by a preponderance at all times in this action. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991); *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008).

## II.     Collateral Estoppel in Dischargeability Cases.

Collateral estoppel principles apply in Section 523 dischargeability cases. *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991); *In re Muhs*, 923 F.3d 377, 385 (4th Cir. 2019). Issue preclusion, or collateral estoppel, bars the "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) *citing New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

The arbitration award in this case was confirmed by the District Court in June 2020. "The preclusive effect of a federal-court judgment is determined by federal common law. . . ." *Id.* at 891. Under federal law, a party seeking to apply collateral estoppel must establish the following:

> (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against

whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

*Old Town Food Service, LLC v. Gold (In re Redskins Grille I, LLC)*, 19-cv-00633 (LMB/MSN), 2020 WL 963033, at *7 (E.D. Va. 2020) *quoting Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).

Judicially confirmed arbitration awards also have preclusive effects in bankruptcy dischargeability proceedings. *Stasz v. Eisenberg (In re Stasz)*, 352 Fed.Appx. 154, 155 (9th Cir. 2009); *In re Kaplan*, BAP No. CC–16–1104–KiFD, 2016 WL 7189820, at *19 (B.A.P. 9th Cir. 2016) (confirming arbitration award for misappropriation of trade secrets); *In re Mosely*, Adv. No. 12–1166 T, 2013 WL 1137061, at *4 (Bankr. D. N.M. March 19, 2013); *Bard v. Appel (In re Appel)*, 315 B.R. 645, 648-50 (E.D. N.Y. 2004); *In re Giordano*, 472 B.R. 313, 325-26 (Bankr. E.D. Va. 2012); *Roth v. McCartin (In re McCartin)*, Adv. No. 10–59014, 2011 WL 2443717, at *4-5 (Bankr. S.D. Ind. June 14, 2011); *In re Swyter*, Adv. No. 00–1177, 2002 WL 34591432, at *7-8 (Bankr. E.D. Va. March 14, 2002); *Tatge v. Chandler (In re Judiciary Tower Assoc.)*, 175 B.R. 796, 806 (Bankr. D. D.C. 1994).[5]

There is no question that, in this case, the parties to the arbitration are the same parties before this Court. There is also no question that Ms. Ngo had a full and fair opportunity to participate in the arbitration proceeding, and in the confirmation of the award by the District

---

[5] The preclusive effect of an unconfirmed arbitration award is less clear. *See In re Dorris Marketing Group, Inc.*, Case No. 03–15025–SSM, 2005 WL 6267050, at *3-4 (Bankr. E.D. Va. 2005) (declining to give res judicata effect to unconfirmed arbitration award); *but see Waterfront Marine Construction, Inc. v. North End 49ers Sandbridge Bulkhead Groups A, B & C,* 251 Va. 417, 431 (1996) ("[W]e will assume, without deciding, that an unconfirmed arbitration award is treated in the same manner as a confirmed award for purposes of *res judicata* analysis.")

Court.[6] Further: (a) the issues were actually determined in the prior proceeding ("element two"); and (b) the determinations were "a critical and necessary part of the decision in the prior proceeding" ("element three"). The federal court judgment is a final and valid judgment.

The remaining, disputed, question is whether the first element has been satisfied, that is, whether the Arbitrator's findings on the "willful and malicious" issue, or his finding that Ms. Ngo acted in a fiduciary capacity, are the same issues presented for decision under the Bankruptcy Code on the dischargeability of the debt in this action. The Court finds that the issues are the same, and that the final Arbitration Award, as confirmed by the Judgment, is entitled to collateral estoppel.

### III.    The Defendant's Rule 12(b)(6) Motion.

The Court will first address the Defendant's Motion to Dismiss the Complaint under Bankruptcy Rule 7012 (incorporating Federal Rule of Civil Procedure 12(b)(6)). Under the Supreme Court's decisions in *Twombly* and *Iqbal*, to survive a motion to dismiss under Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In *Iqbal*, the Court held: "[W]hether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While Bankruptcy Rule 7008 (incorporating Federal Rule of Civil

---

[6] Ms. Ngo declined to participate in the hearings that led to the Interim Award and the Final Award, but that was her choice. The Arbitrator noted that Ms. Ngo was afforded "liberal opportunities to respond." Pl. Ex. B, n. 1. Ms. Ngo, it must be remembered, was the party who moved for a stay of the District Court action and demanded arbitration in the first place.

10

Procedure 8(a)(2)) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief. . ." it is also clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

The Court concludes, for the reasons stated below in granting the Plaintiff's Motion for Summary Judgment, that the Complaint states plausible claims under *Twombly* and *Iqbal*. The Court, therefore, will deny the Defendant's Motion to Dismiss.

### IV.    The Plaintiff's Motion for Summary Judgment.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. Pro. 56(a)). The moving party has the initial burden of showing that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). When the moving party has met its initial burden, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Whether a fact is material or not depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 *quoting* Fed. R. Civ. P. 1.

Ms. Ngo concedes, properly, that the permanent injunctive relief ordered by the Arbitrator, and confirmed by the District Court, does not constitute a claim in her bankruptcy case and cannot be discharged. *In re LaFemina*, Case No. 14–43362–nhl, 2017 WL 4404254, at *5 (Bankr. E.D. N.Y. 2017) ("[T]he weight of authority on this issue provides that breach of a covenant not to compete only constitutes a claim where it yields a right to repayment as an alternative to, rather than in addition to, equitable relief."); *In re Gacharna*, 480 B.R. 909 (Bankr. N.D. Ill. 2012) (injunctive provisions in settlement agreement for misappropriation of trade secrets not a claim); *In re Annabel*, 263 B.R. 19, 27 (Bankr. N.D. N.Y. 2001) ("[I]n the context of a chapter 7 bankruptcy, the discharge injunction will not affect the enforcement of a party's injunctive breach remedy on a debtor's covenant not to compete where compliance requires simple abstention from conduct and does not give rise to monetary payment.") The Arbitrator in this case found that an award of unjust enrichment damages was inappropriate. Pl. Ex. A at 82 ("There is no allegation that Ms. Ngo gained any financial benefit at all from her misappropriation, and I am disinclined to find, solely by adverse inference as a discovery sanction, that she did so. Such a remedy would go beyond what is appropriate to 'fit the wrong.'") It necessarily follows that the injunctive relief awarded to CACI does not constitute a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment" under Bankruptcy Code Section 101(5)(B). The equitable relief, therefore, is not a claim that can be discharged in Ms. Ngo's bankruptcy.

Turning to the Arbitrator's award of attorney's fees and costs, as confirmed by the District Court, this Court has previously held that an award of attorney's fees and costs follows the principal award – if the principal award is non-dischargeable, the attorney's fees and costs likewise are non-dischargeable. *In re Uzaldin*, 418 B.R. 166, 172 (Bankr. E.D. Va. 2009) *citing Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743 (4th Cir. 1990).

A. Count I – Section 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code excepts from a debtor's discharge claims that arise from "willful and malicious injury . . . to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The Supreme Court has held that in order for a debt to be non-dischargeable under Section 523(a)(6), there must be "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Relying on the Second Restatement of Torts, the Court held that the debtor must have intended "the consequences of an act,' not simply 'the act itself." *Id.* at 61–62, *citing* Restatement (Second) of Torts § 8A, cmt. a, at 15 (1964). Acts that are negligent or reckless do not suffice; a resulting injury must have been caused by "willful and malicious" conduct. *Id*. at 63-64 *citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934). Section 523(a)(6) "requires intent to injure, and does not encompass mere negligent or reckless conduct." *In re Muhs*, 923 F.3d, at 387; *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006).

The Fourth Circuit has held that the term "willful" means "deliberate or intentional." *In re Stanley*, 66 F.3d 664, 667 (4th Cir. 1995); *see St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (4th Cir. 1985) *citing* H.R. Rep. No. 595, 95th Cong., 1st Sess. 365, *reprinted* in 1978 U.S. Code Cong. & Ad. News 5963, 6320–21. Findings of "conscious disregard" or

13

"reckless indifference" are insufficient. *In re Duncan*, 448 F.3d, at 729. An injury may be found to be willful under § 523(a)(6) only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result. *In re Parks*, 91 F. App'x 817, 819 (4th Cir. 2003); *In re Long*, 504 B.R. 424, 435–36 (Bankr. W.D. Va. 2014); *Haas v. Trammell (In re Trammell)*, 388 B.R. 182, 186–87 (Bankr. E.D. Va. 2008) (noting that the Fourth Circuit has required "objective substantial certainty" or "subjective motive" in the debtor's intent to cause harm); *Reed v. Owens (In re Owens)*, 449 B.R. 239, 254–55 (Bankr. E.D. Va. 2011) (same).

The term "malice" is defined as "an act causing injury without just cause or excuse." *In re Sparrow*, 306 B.R. 812, 838 (Bankr. E.D. Va. 2003); *Branch Banking & Trust Co. of Va., Inc. v. Powers (In re Powers)*, 227 B.R. 73, 76 (Bankr. E.D. Va. 1998).

(i)     *Whether CACI Suffered an Injury.*

Ms. Ngo first argues that CACI's fees and costs are dischargeable because the Arbitrator awarded only injunctive relief, and no damages. In Ms. Ngo's view, because the Arbitrator declined to award damages, CACI has suffered no "direct and quantifiable injury" that can be determined to be non-dischargeable. Ms. Ngo's argument, however, puts a gloss on the statute that is unwarranted. Section 523(a)(6) provides an exception to discharge for "any debt" for willful and malicious injury. The term "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as:

> right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]

11 U.S.C. § 101(5)(A).

14

CACI plainly suffered an injury in the form of $683,845.70 in legal fees and $67,022.37 in expenses, plus $2,940.75 in costs, in asserting its legal rights against Ms. Ngo. Pl. Ex. B at 42-43. CACI's right to payment of its attorney's fees, expenses, and costs constitutes a "debt" within the meaning of Section 523(a)(6).

    (ii)    *Whether Ms. Ngo Intended to Cause CACI Harm.*

Ms. Ngo further argues that CACI has failed to demonstrate that she intended to cause it harm as required by *Geiger, Muhs and Duncan.* The Arbitrator repeatedly found that Ms. Ngo acted willfully and maliciously, both in misappropriating CACI's trade secrets and in spoliating the evidence during the arbitration proceedings. *See* Pl. Ex. A, Interim Award at 86 ("I find and conclude that this conduct demonstrates 'willfulness. . . .'"), 91 ("persuasive evidence of an intention to keep the information to herself"), 92 ("strongly bespeaks an intention to cause injury or harm to CACI"), 93 ("This shows an intent to cause injury or harm").

As the Fourth Circuit noted in *Muhs*: "We cannot conclude that just because the words are the same, the meaning is also the same." 923 F.3d, at 388. Fortunately, the Arbitrator in this case took care to explain what he meant and employed the following standard:

> Under the federal act, an act is done "willfully" if it is voluntary and intentional, rather than by mistake or accident. An act is done "maliciously" if prompted or accompanied by **an intent to cause injury or harm.**

Pl. Ex. A at 85 *citing Steves and Sons, Inc. v. Jen-Weld, Inc.*, No. 3:16-cv-00545-REP (E.D. Va.), ECF No. 1614 (May 5, 2018) (Jury Instruction No. 38) (emphasis added in Interim Arbitration Award). This standard is the same as that employed in *Geiger, Muhs* and *Duncan,* and in the Fourth Circuit's cases employing "deliberate or intentional" in *Stanley* and *St. Paul Fire and Marine.*

15

The Court concludes, therefore, that the Arbitrator's Interim and Final Awards, as confirmed by the District Court, are entitled to collateral estoppel on the issue of whether Ms. Ngo's conduct was "willful and malicious."

B.  Count II – Section 523(a)(4).

Section 523(a)(4) provides for an exception to a debtor's discharge where a debt is the result of the debtor's fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. 11 U.S.C § 523(a)(4). To succeed on a claim of fiduciary defalcation, "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation." *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (citation omitted).

(i)  *Was Ms. Ngo Acting as a Fiduciary?*

Ms. Ngo first argues that Section 523(a)(4) does not apply because she was not acting in a fiduciary capacity. The term "fiduciary" under Section 523(a)(4) is limited to instances involving technical or express trusts. *Strack,* 524 F.3d at 497 n. 6; *Harrell v. Merch.'s Express Money Order Co. (In re Harrell)*, 173 F.3d 850, 1999 WL 150278, at *1, *3 (4th Cir. Mar. 19, 1999). Accordingly, the exception applies only to a debt created by a person who was already a fiduciary at the time that the debt was created. *KMK Factoring, LLC v. McKnew (In re McKnew)*, 270 B.R. 593, 624 (Bankr. E.D. Va. 2001); *Glob. Express Money Orders, Inc. v. Davis (In re Davis)*, 262 B.R. 673, 682 (Bankr. E.D. Va. 2001). *See also Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (Cardozo, J.) ("[T]he statute [Bankruptcy Act Section 17(4), the predecessor to 11 U.S.C. § 523(a)(4)] speaks of technical trusts, and not those which

16

the law implies from the contract. . . . It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto.") (internal quotation marks omitted).

Although the term "fiduciary capacity" is determined under federal common law, *Harrell*, No. 98-1728, 1999 WL 150278, at * 3, the Court will look to State law for guidance. *See Strack*, 524 F.3d at 498 ("in determining whether such a trust was established, we look to the law of the Commonwealth of Virginia"); *Airlines Reporting Corp. v. Ellison (In re Ellison)*, 296 F.3d 266, 271 (4th Cir. 2002) ("[T]he Ellisons, when acting as officers and directors of Sovereign Travel, occupied a fiduciary relationship toward [Sovereign Travel] under West Virginia law") (internal quotation marks omitted); *The Credit Experts, LLC v. Santos (In re Santos)*, Adv. No. 11-01680, 2012 WL 2564366, at *1, *4 (Bankr. E.D. Va. July 2, 2012); *McKnew*, 270 B.R. at 628 ("To determine the existence of a fiduciary relationship under § 523(a)(4), a court must apply federal law. However, state law is relevant to this inquiry") (citations omitted).

In this case, the Court finds that there is no genuine dispute that Ms. Ngo occupied the position of a fiduciary. First, the Arbitrator specifically found that Ms. Ngo operated at the "highest levels of the company," and was a fiduciary. *See* Pl. Ex. A, Interim Award at 6-7 (Ms. Ngo operated at the "highest levels of the Company"), 51 ("It also violated duties of loyalty imposed upon [an] employee in the employment relationship, and thus constituted a breach of fiduciary duty"), 53 ("For similar reasons, Ms. Ngo is under a fiduciary duty imposed by common law not to retain her former employer's competitively valuable, confidential property

17

for her own personal purposes.") There is no reason to conclude that the Arbitrator used the term fiduciary in a way that is different from that intended by Section 534(a)(4) of the Bankruptcy Code. The Court concludes that the Arbitrator's finding that Ms. Ngo was a fiduciary is entitled to collateral estoppel.

Moreover, an employee in a senior capacity has fiduciary duties to her employer under Virginia law. *See DecisionQ Corp. v. GigM Technologies, LLC*, Case No. 1:17-cv-00232, 2017 WL 11504624, at *15 (E.D. Va. Aug. 9, 2017); *Hair Club for Men, LLC v. Illusion Day Spa, LLC*, Civil Action No. 1:16–cv–236, 2016 WL 4577019, at *9 (E.D. Va. Aug. 31, 2016); *Today Homes, Inc. v. Williams*, 272 Va. 462, 471-74 (2006). This conclusion is reinforced by the terms of Ms. Ngo's Employment Agreement. *See* Pl. Ex. D at 3. Even absent the Arbitrator's findings, the Court concludes that there is no genuine dispute that Ms. Ngo acted as a fiduciary as a matter of law.

      (ii)    *Has the Plaintiff Satisfied the Bullock Standard?*

The Supreme Court's 2013 opinion in *Bullock* changed the law in the Fourth Circuit with respect to the proof needed to sustain a claim under Section 523(a)(4). *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). Previously, "negligence or even an innocent mistake which results in the failure to account" was sufficient to prove a case under Section 523(a)(4). *See In re Strack*, 524 F.3d at 498 n.7; *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001). *Bullock* raised the standard to that of intentional misconduct, or at least reckless disregard of a known duty. The Supreme Court held with respect to the term "defalcation:"

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as

intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id*., § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include " 'willful blindness' "). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id*., § 2.02(2)(c), at 226 (emphasis added). Cf. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (defining scienter for securities law purposes as "a mental state embracing intent to deceive, manipulate, or defraud").

*Bullock*, 569 U.S., at 273-74

In this case, the Arbitrator's findings easily satisfy the first part of the *Bullock* standard – "bad faith, moral turpitude, or other immoral conduct." See Pl. Ex. A, pp. 39 ("I find and conclude that Ms. Ngo acquired the information at issue by 'improper means'…"), 40 ("Ms. Ngo acquired the CACI information at issue by improper means…"), 51 ("It also violated duties of loyalty imposed upon an employee in the employment relationship, and thus constituted a breach of fiduciary duty"), 53 ("Ms. Ngo is under a fiduciary duty imposed by the common law not to retain her former employer's competitively valuable, confidential property for her own personal purposes.")

The Court finds that the Arbitrator's finding that Ms. Ngo violated her fiduciary duties to CACI, is entitled to collateral estoppel.[7]

---

[7] In light of the Court's rulings on fiduciary capacity, the Court finds it unnecessary to address CACI's alternative argument under Section 523(a)(4) that Ms. Ngo embezzled its confidential information.

**Conclusion**

For the foregoing reasons, the Court will enter a separate Order under which:

A. The Defendant's Motion to Dismiss will be denied.

B. The Plaintiff's Motion for Summary Judgment will be granted, and the Judgment will be declared to be non-dischargeable under 11 U.S.C. §§ 523(a)(6) and 523(a)(4).

C. The Clerk will mail copies of this Memorandum Opinion along with the accompanying Order, or will provide cm-ecf notice of their entry, to the parties below.

Date: Jul 2 2021

Alexandria, Virginia

/s/ Brian F Kenney
Brian F. Kenney
United States Bankruptcy Judge
Entered On Docket: July 2, 2021

Copies to:

Stephen E. Leach, Esquire
8270 Greensboro Drive
Suite 700
Tysons Corner, VA 22102
*Counsel for Plaintiff*

Bao-Tran Xuan Ngo
42516 Legacy Park Dr.
Ashburn, VA 20148
*Defendant*

Robert M. Marino, Esquire
510 King Street
Suite 301
Alexandria, VA 22314-314*3*
*Counsel for Defendant*

20